Terry Summerlin appeals from a partial summary judgment entered in favor of Sharon Summerlin by the Mobile Circuit Court. We set aside the trial court's certification of the summary judgment as final under Rule 54(b), Ala. R. Civ. P., and remand.
 Facts and Procedural History
On July 23, 2005, Thomas R. Summerlin, 38, and his 7-year-old stepson, Noah C. Butler, were on the beach in Gulf Shores when they were struck by lightning and killed. Thomas was buried in a plot owned by his father, Terry Summerlin, at Serenity Memorial Gardens Cemetery; Noah was buried in a plot owned by Sharon Summerlin, Noah's mother and Thomas's widow, at Mobile Memorial Gardens.
On September 28, 2005, Sharon informed a representative of Serenity Memorial that she wanted to have Thomas's remains disinterred and reinterred at Mobile Memorial Gardens. The representative stated that Serenity Memorial would not permit the disinterment without a court order requiring Serenity Memorial to comply with Sharon's request.
Sharon then filed in the Mobile Circuit Court a "petition for injunctive relief," naming as defendants SLG Group, Inc., d/b/a Serenity Memorial Gardens,[1] and Terry Summerlin.[2]
Sharon alleged that Terry had "unduly pressured" her into agreeing to bury Thomas at Serenity Memorial rather than at Mobile Memorial. Sharon's petition requested the court to
 "issue all such orders necessary to require [Serenity Memorial] to allow the disinterment of the remains of Thomas R. Summerlin from Serenity Memorial Gardens; [to] issue all necessary orders allowing the remains of Thomas R. Summerlin to be reinterred at Mobile Memorial Gardens; and . . . [to order] such other, further, and different relief [that the plaintiffs] may be entitled to receive."
Terry filed an answer to the petition. Among other things, Terry denied having "unduly pressured" Sharon into agreeing to Thomas's burial at Serenity Memorial, and Terry requested that the court deny Sharon's petition to disinter Thomas's remains.
On March 13, 2006, Sharon moved for a summary judgment. Sharon contended that she had initially planned to bury Thomas at Mobile Memorial Gardens but that "she was then persuaded by [Terry] to have [Thomas] buried at Serenity [Memorial]." Sharon asserted that Terry "used economic duress by demanding [that Thomas] be buried in Serenity Memorial Gardens at [Terry's] expense," and that she "reluctantly . . . acquiesced to [Terry's] demand."
On April 5, 2006, Terry filed a breach-of-contract counterclaim against Sharon. Terry contended that after Thomas's death Sharon told him "she did not know how she was going to pay for [Thomas's] funeral and burial expenses." Terry alleged that he and Sharon then "entered into a verbal contract in which [Terry] agreed to pay for [Thomas's] burial" in exchange for Sharon's agreement to have Thomas "interred at Serenity Memorial Gardens." Terry's counterclaim asserts, and Sharon *Page 172 
does not dispute, that Sharon and Terry signed a card entitled "Interment Record," which authorized Thomas's burial in Serenity Memorial Gardens.
Terry's counterclaim also alleges that a few days after Thomas's funeral, when Sharon mentioned to Terry that she wanted to move Thomas's remains from Serenity Memorial to Mobile Memorial, Terry and Sharon entered into a second contract. The terms of that contract, Terry contends, "were that, in consideration for allowing [Sharon] to retain a truck and furniture [for] which [Thomas] owed [Terry] at least $5,700, [Sharon agreed] to leave [Thomas's] remains undisturbed." Terry claimed Sharon had breached that agreement by filing the present action seeking to disinter Thomas's remains. Sharon later filed an answer to Terry's breach-of-contract counterclaim.
On the same date he filed his counter-claim, Terry also filed materials in opposition to Sharon's summary-judgment motion. Among other things, Terry included an affidavit from James Baldwin, the manager of the funeral home at Serenity Memorial. In his affidavit, Baldwin asserts that he witnessed Sharon's agreement to bury Thomas at Serenity Memorial; that he witnessed her signing of an "interment card" authorizing Thomas's burial at Serenity Memorial; and that he witnessed her agreement that Terry would pay Thomas's funeral expenses. Baldwin also stated in his affidavit that "[a]t no time did [he] witness [Sharon's] being pressured or coerced into agreeing to permit [Thomas] to be buried at Serenity Memorial."
On June 26, 2006, the trial court entered the following written order:
 "On the 28th day of April, 2006, [the attorneys for Sharon and Terry] in open court submitted oral argument and written caselaw concerning the issues of relief prayed for by [Sharon]. After careful consideration it is hereby ORDERED, ADJUDGED and DECREED that a final judgment in favor of [Sharon] for the relief requested in [her] motion for a summary judgment is hereby granted. Said order is hereby made final under [Rule 54(b), Ala. R. Civ. P.]. It is further ORDERED, ADJUDGED and DECREED that [Sharon] may disinter the remains of [Thomas] from Serenity Memorial Gardens and reinter the remains in Mobile Memorial Gardens.
 "It is further ORDERED, ADJUDGED and DECREED that the defendant, SLG Group, Inc., shall comply with the request of [Sharon] to disinter the remains of [Thomas] from Serenity Memorial Gardens and reinter the remains in Mobile Memorial Gardens."
Terry filed a timely notice of appeal to this Court.
 Discussion
Terry contends that the summary judgment in favor of Sharon was inappropriate. He argues that there is a genuine issue of material fact because, he says, there is substantial evidence indicating that Sharon consented, without coercion or duress, to Thomas's interment at Serenity Memorial. Conversely, Sharon argues that her consent to Thomas's burial at Serenity Memorial was the result of coercion by Terry or duress. Moreover, she asserts that her consent to Thomas's interment at Serenity Memorial is irrelevant because, she says, as the surviving spouse she has the exclusive right to decide whether Thomas's remains should be disinterred from Serenity Memorial and reinterred at Mobile Memorial Gardens.
However, there is a fundamental issue in this appeal not addressed by the parties — namely, the appropriateness of the trial court's certification, under Rule 54(b), Ala. R. Civ. P., of its June 26, 2006, order *Page 173 
entering a summary judgment in favor of Sharon.
Rule 54(b) states, in pertinent part:
 "When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."
This Court, in Branch v. SouthTrust Bank of Dothan,N.A., 514 So.2d 1373 (Ala. 1987), noted:
 "Rule 54(b), A.R. Civ. P., provides a means of making final `an order which does not adjudicate the entire case but as to which there is no just reason for delay in the attachment of finality.' Foster v. Greer Sons, Inc., 446 So.2d 605, 609 (Ala. 1984). `Rule 54(b) certifications should be granted only in exceptional cases and "should not be entered routinely or as a courtesy or accommodation to counsel." Page v. Preisser, 585 F.2d 336, 339 (8th Cir.1978).' Foster, 446 So.2d at 610.
 "Rule 54(b) is properly applied in a situation where the claim and the counterclaim present more than one claim for relief, either of which could have been separately enforced. Cates v. Bush, 293 Ala. 535, 307 So.2d 6 (1975). Under `appropriate facts,' a partial summary judgment on an original claim may be finally adjudicated pursuant to Rule 54(b), leaving a counterclaim undecided so that the parties can further litigate the issues presented by the counter-claim."
514 So.2d at 1374.
In Branch, the trial court certified as a final judgment, under Rule 54(b), its summary judgment in favor of SouthTrust Bank on its claim that Branch had defaulted on a promissory note. 514 So.2d at 1373. However, at the time of the Rule 54(b) certification, the trial court had not ruled on Branch's counterclaim, which was "based upon an alleged fraudulent representation by an agent of SouthTrust upon which Branch claim[ed] he relied in executing the promissory note."514 So.2d at 1374. This Court set aside the Rule 54(b) certification and remanded the case to the trial court, noting that because the issues in SouthTrust's claim and Branch's counterclaim were "so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results," it would not be "in the interest of justice" to adjudicate the claims separately. 514 So.2d at 1374.
In this case, the trial court purported to enter a summary judgment as to Sharon's entire claim — namely, her petition for injunctive relief. In form, Sharon's "claim" appears to be separate and distinct from Terry's breach-of-contract counterclaim. If one looks beyond form, however, Terry's breach-of-contract counterclaim is, in substance, a defense to Sharon's petition for injunctive relief.
For Sharon to be entitled to an injunction requiring Serenity Memorial to permit her to have Thomas's remains disinterred, she must show that she has a clear, specific, legal right to disinter Thomas's remains. See Gulf House Ass'n, Inc. v.Town of Gulf Shores, 484 So.2d 1061, 1064 (Ala. 1985) ("A permanent injunction will be granted when there exists a clear, specific, legal right requiring protection and the injunction is necessary to prevent irreparable injury and there is no adequate remedy at law."). The essence of Terry's breach-of-contract counterclaim — as well as his arguments and materials in opposition to Sharon's summary-judgment motion — is that Sharon does not have "a clear, specific, legal right" to the injunctive *Page 174 
relief she is seeking. Although the trial court's June 26 order purports to rule only on the claim presented in Sharon's petition and not on Terry's counterclaim, the trial court's summary judgment granting Sharon the relief she requested in her petition amounts to a denial of the relief Terry seeks to obtain by pursuing his counterclaim.
In short, the issues presented in Terry's counterclaim and those in Sharon's petition for injunctive relief "are so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results." Branch,514 So.2d at 1374. "We must conclude, therefore, that in the interest of justice, the claims should not be adjudicated separately." 514 So.2d at 1374. Consequently, the trial court erred in certifying its summary judgment in favor of Sharon as final under Rule 54(b), Ala. R. Civ. P. Branch,514 So.2d at 1374. Cf. Automatic Liquid Packaging, Inc. v.Dominik, 852 F.2d 1036, 1038 (7th Cir.1988) (describing a claim presented in the plaintiff's complaint and one presented in the defendant's counterclaim as "the same claim, expressing the parties' opposed interpretations of [the agreement at issue], though configured as a plaintiff's claim in the complaint and as a defense masquerading as a positive claim for relief in the counterclaim").
 Conclusion
The trial court's certification of finality under Rule 54(b), Ala. R. Civ. P., is set aside, and the case is remanded to the trial court.
CERTIFICATION SET ASIDE; REMANDED.
NABERS, C.J., and LYONS, WOODALL, and PARKER, JJ., concur.
[1] Neither SLG Group nor Serenity Memorial is a party to this appeal.
[2] Thomas and Sharon's daughter was also named as a plaintiff to the action. As a minor, the daughter sued by and through her mother, Sharon.